UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN SHEELER, <br><br> Plaintiff <br><br> v. <br><br> COUNSELOR CHERRY, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 3:24-cv-00326 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Dustin Sheeler ("Sheeler"), an inmate housed at the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Medication Assisted Treatment ("MAT") Program Counselor Cherry, MAT Program Counselor Warholic, Corrections Health Care Administrator ("CHCA") McCorkle, and Superintendent Rivello. Presently before the Court is Defendants' motion (Doc. 15) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Sheeler failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. The Court will grant Defendants' motion but will grant Sheeler leave to amend certain claims as set forth below.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

The gravamen of Sheeler's complaint is that he was denied medically assisted treatment for opioid use disorder. (Doc. 1, at 4). Sheeler alleges that he was previously

---

[1] Sheeler was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 20) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

enrolled in the MAT Program in Philadelphia County and that prison officials at the State Correctional Institution at Smithfield informed him that he would be eligible for a drug called Sublocade.[2] (Doc. 1, at 4; Doc. 1, at 5). However, Sheeler alleges that when he arrived at SCI-Huntindgon, Defendants Cherry and Warholic refused to let him participate in the MAT Program. (Doc. 1, at 4). He further alleges that Defendants Rivello and McCorkle "upheld the decisions to not allow [him] to participate in the MAT Program." (Doc. 1, at 5).

Based on his opioid use disorder, Sheeler claims to be a qualified individual with a disability under the terms of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131(2). (Doc. 1, at 5). He alleges that Defendants violated his constitutional rights, as well as his rights under Title II of the ADA. (Doc. 1, at 5).

Sheeler claims mental, emotional, and physical injuries and seeks monetary damages, and declaratory and injunctive relief. (Doc. 1, at 5).

II.     **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule

---

[2]Sublocade is the brand name for a generic drug called buprenorphine. WebMD describes buprenorphine as belonging to "a class of drugs called mixed opioid agonist-antagonists" that are used to help "prevent withdrawal symptoms caused by stopping other opioids." https://www.webmd.com/drugs/2/drug-174557/sublocade-subcutaneous/details (visited Jan. 7, 2025).

12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d

1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must

permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.   DISCUSSION**

    A.   PERSONAL INVOLVEMENT OF CHERRY AND WARHOLIC

In order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting *Rode*, 845 F.2d at 1207)). Thus, in pursuing any Section 1983 claim against prison officials, a plaintiff may not rely solely on respondeat superior, which is a theory of liability that "arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 692 (1978)).

Sheeler alleges that Defendants Cherry and Warholic refused to let him participate in the MAT Program. (Doc. 1, at 4). The Court finds that these allegations are sufficient to establish personal involvement by these Defendants in the purported constitutional violations. Accordingly, the Court will deny Defendants' motion to dismiss the claims against Cherry and Warholic for lack of personal involvement. The Court will consider whether dismissal of

5

the Section 1983 claim against Defendants Cherry and Warholic is appropriate because Sheeler failed to allege a constitutional violation.

### B. SUPERVISORY CLAIMS AGAINST RIVELLO AND MCCORKLE

As stated, Section 1983 liability cannot be "predicated solely on the operation of respondeat superior." *Rode*, 845 F.2d at 1207 (citations omitted). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted*, *judgment rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). First, a plaintiff may allege a supervisor enacted a policy, practice or custom, with deliberate indifference to the consequences, which directly caused the constitutional harm. *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Failure to train or supervise allegations are subcategories of policy or practice liability. *Barkes*, 766 F.3d at 316. Second, a plaintiff may state a claim by alleging a supervisor "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586).

Sheeler's allegation that Defendants Rivello and McCorkle upheld the decision of their subordinates is insufficient to state a claim. (Doc. 1, at 4). For liability to attach to supervisors, their knowledge and acquiescence in unconstitutional conduct must be contemporaneous to the misconduct. *Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (nonprecedential) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)). Sheeler alleges that Defendants Rivello and McCorkle upheld the decision of Defendants Cherry and Warholic

6

after they denied his participation in the MAT Program, which is insufficient to allege their knowledge and acquiescence in Cherry and Warholic's alleged unconstitutional conduct.

Additionally, Sheeler does not aver that Defendants Rivello and McCorkle created and implemented a policy allowing prison medical providers to deny Sublocade, or any other MAT medication, to inmates suffering from opioid use disorder or withdrawal. The averments are insufficient to support a claim that Defendants Rivello and McCorkle acted as policymakers responsible for adopting a policy that caused Sheeler's alleged constitutional injury. Therefore, the Eighth Amendment claim against Defendants Rivello and McCorkle is subject to dismissal. The Court will nonetheless consider whether dismissal of the Section 1983 claim against Defendants Rivello and McCorkle is appropriate for failure to state a claim.

### C.  EIGHTH AMENDMENT CLAIM

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Monmouth Cnty.*, 834 F.2d at 347 (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

Sheeler alleges that Defendants Cherry and Warholic refused to let him participate in the MAT Program, and that Defendants Rivello and McCorkle upheld this decision. (Doc. 1, at 4; Doc. 1, at 5).

First, the Court considers Sheeler's allegation that Defendants Rivello and McCorkle were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. By Sheeler's own averments, Defendants Rivello and McCorkle are not medical providers and have not treated him. Superintendent Rivello and Corrections Health Care Administrator McCorkle are non-medical prison personnel in that are not responsible for directly rendering medical care to Sheeler. *See Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005) (nonprecedential) (noting that Health Care Administrators "are undisputably

administrators, not doctors"). Because these individuals are not medical personnel, they cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991). The Court will grant Defendants' motion to dismiss the Eighth Amendment inadequate medical care claim against Rivello and McCorkle.

The Court next considers Sheeler's allegation that Defendants Cherry and Warholic denied his participation in the MAT Program to treat his opioid abuse disorder, in violation of his Eighth Amendment rights. (Doc. 1, at 4). The complaint contains sufficient factual allegations to assert that Sheeler has a serious medical need of opioid use disorder. However, Sheeler does not allege that he suffered any adverse health consequences as a result of the denial of MAT. Nor does he allege that he advised Defendants Cherry and Warholic that he was experiencing any unpleasant symptoms related to detoxification without mediation. At best, Sheeler's complaint demonstrates his disagreement with being denied placement in the MAT Program. Though he may have wished to participate in the MAT Program and obtain Sublocade, his disagreement with the course of action that Defendants took is not enough to state a Section 1983 claim. *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989). This is particularly so in light of the fact that there are no allegations in the complaint that Defendants Cherry and Warholic intentionally withheld medical treatment from Sheeler in order to inflict pain or harm upon him. *Farmer*, 511 U.S. at 837; *Rouse*, 182 F.3d at 197. The allegations amount to nothing more than Sheeler's subjective disagreement with the treatment decisions of Defendants Cherry and Warholic. *See, e.g.*, *Groppi v. Bosco*, 208 F. App'x 113, 115 (3d Cir. 2006) (nonprecedential) (finding that a prisoner "does not have a constitutional right to

participate in the drug treatment program") (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)). The Court will dismiss this claim against Defendants Cherry and Warholic with leave to amend.

### D. AMERICANS WITH DISABILITIES ACT CLAIM

Sheeler fares no better with respect to his claim that Defendants violated the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132(1). Individual defendants, however, are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to suit. *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted). Thus, Sheeler cannot maintain his ADA claim against the Defendants in their individual capacities.

To the extent Sheeler is suing the Defendants in their official capacities, the claim is viable as the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that violates the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) ("state officers *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment") (emphasis in original).

In order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Pursuant to this standard, Sheeler must initially state a valid claim under Title II of the ADA, and to do this he must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity; (4) by reason of his disability. *Bowers*, 475 F.3d at 553 n.32; 42 U.S.C. § 12132.

Based upon a careful review of the complaint, the Court finds that there are no specific allegations that Sheeler being denied access to any benefits, programs, or activities due to any disability. Although he generally asserts that he has been denied access to the MAT Program, he has not alleged a claim of discrimination relating to that alleged exclusion and does not specifically elaborate how the Defendants discriminated against him. Nor does Sheeler allege any facts that demonstrate that the alleged inadequate medical care he received was because of a disability. *See, e.g.*, *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (nonprecedential) (finding that Iseley had not claimed that he was excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions") (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996)). The Court will dismiss Sheeler's ADA claim against the Defendants in their official capacities with leave to amend.

E. LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson,* 293 F.3d at 114. For the reasons set forth above, the Court will grant Sheeler leave to amend his Eighth Amendment claim against Defendants Cherry and Warholic, and his ADA claim against Defendants Cherry, Warholic, Rivello, and McCorkle. Sheeler is advised that his amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. His amended complaint shall set forth his claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV. CONCLUSION

Consistent with the foregoing, the Court will grant Defendants' motion (Doc. 15) to dismiss. The motion will be granted with prejudice and without leave to amend as to the Eighth Amendment claim against Defendants Rivello and McCorkle. The motion will be granted without prejudice and with leave to amend as to the Eighth Amendment claim against Defendants Cherry and Warholic, and the ADA claim against Defendants Cherry, Warholic, Rivello, and McCorkle.

An appropriate Order shall issue.

Dated: January 13, 2025          *s/ Karoline Mehalchick*
                                 **KAROLINE MEHALCHICK**
                                 **United States District Judge**