UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DUSTIN SHEELER,<br><br>                Plaintiff<br><br>    v.<br><br>COUNSELOR CHERRY, *et al.*,<br><br>                Defendants. | CIVIL ACTION NO. 3:24-cv-00326<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Dustin Sheeler ("Sheeler"), an inmate housed at the State Correctional Institution, Huntingdon, Pennsylvania ("SCI-Huntingdon"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Medication Assisted Treatment ("MAT") Program Counselor Cherry, MAT Program Counselor Warholic, Corrections Health Care Administrator ("CHCA") McCorkle, and Superintendent Rivello.

On May 17, 2024, Defendants filed a Rule 12(b) motion to dismiss. (Doc. 15). On January 13, 2025, the Court granted Defendants' motion and dismissed the complaint with leave to amend certain claims. (Doc. 22; Doc. 23). Specifically, the Court granted the motion with prejudice and without leave to amend as to the Eighth Amendment claim against Defendants Rivello and McCorkle. (Doc. 22; Doc. 23). The Court granted the motion without prejudice and with leave to amend as to the Eighth Amendment claim against Defendants Cherry and Warholic, and the Americans with Disabilities Act ("ADA") claim against Defendants Rivello, McCorkle, Cherry, and Warholic. (Doc. 22; Doc. 23).

Presently before the Court is Sheeler's proposed amended complaint. (Doc. 26). The amended complaint identifies Cherry and Warholic as Defendants, as well as three newly named Defendants—the Pennsylvania Department of Corrections ("DOC"), Secretary of

Corrections Laurel Harry, and Director of Healthcare Services Erica Smith. (Doc. 26). After reviewing the amended complaint, the Court will dismiss it pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as Sheeler has failed to cure the deficiencies listed in the January 13, 2025 Memorandum. The amended complaint asserts essentially identical claims against the Defendants for the same underlying events that gave rise to the claims in the original complaint. The Court will also dismiss the action against the DOC pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

I. **ALLEGATIONS OF THE AMENDED COMPLAINT**

The gravamen of Sheeler's amended complaint is that he was denied medically assisted treatment for opioid use disorder. (Doc. 26, at 4-6). Sheeler alleges that he was previously enrolled in the MAT Program in Philadelphia County and that prison officials at the State Correctional Institution at Smithfield informed him that he would be eligible for a drug called Sublocade.[1] (Doc. 26, at 5). However, Sheeler alleges that when he arrived at SCI-Huntindgon, Defendants Cherry and Warholic refused to let him participate in the MAT Program. (Doc. 26, at 5). He further alleges that the DOC, Harry, and Smith "are responsible for creating and implementing the policy about who can get medication for opio[i]d disorder." (Doc. 26, at 5). Since his incarceration, Sheeler asserts that he "tried naltrexone…but still struggled with cravings to use."[2] (Doc. 26, at 4).

---

[1] Sublocade is the brand name for a generic drug called buprenorphine. WebMD describes buprenorphine as a drug used to treat opioid use disorder that "works by partially turning on the same receptors in your body that opioids do…[which] helps ease withdrawal symptoms and cravings in people with opioid use disorder." https://www.webmd.com/drugs/2/drug-170329/belbuca-buccal/details (visited March 6, 2025).

[2] Naltrexone is the generic name for the drug ReVia. WebMD describes Naltrexone as a drug used to treat people with an opioid use disorder who have already stopped using opioids

2

Based on his opioid use disorder, Sheeler claims to be a qualified individual with a disability under the terms of the ADA, 42 U.S.C. § 12131(2). (Doc. 26, at 6). He alleges that Defendants violated his constitutional rights, as well as his rights under Title II of the ADA. (Doc. 26, at 6).

Sheeler claims mental, emotional, and physical injuries and seeks monetary damages, and declaratory and injunctive relief. (Doc. 26, at 6).

## II.    LEGAL STANDARD

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996), authorizes a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A. The Court is required to identify cognizable claims and to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B), 28 U.S.C. § 1915A(b). This initial screening is to be done as soon as practicable and need not await service of process. *See* 28 U.S.C. § 1915A(a).

In dismissing claims under §§ 1915(e)(2) and 1915A, district courts apply the standard governing motions to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *Smithson v. Koons*, Civ. No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) (stating "[t]he legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for

---

that "works by blocking the effects of opioids." https://www.webmd.com/drugs/2/drug-7399/naltrexone-oral/details (visited March 6, 2025).

dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Federal Rule of Civil Procedure 12(b)(6) standard to dismissal for failure to state a claim under §1915(e)(2)(B)). In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

Because Sheeler proceeds *pro se*, his pleading is liberally construed and his amended complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

### III. DISCUSSION

#### A. CLAIMS AGAINST THE DOC

Sheeler has named the Pennsylvania Department of Corrections as a Defendant in this action. (Doc. 26, at 5). However, the Department of Corrections is not amenable to suit because it is not a person as required for purposes of § 1983, and it is entitled to immunity under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983 and is not a "person" for purposes of that provision). Eleventh Amendment immunity prevents Sheeler from suing the Department of Corrections as a matter of law. "Because the Commonwealth

4

of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, *see* PA. STAT. ANN. tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). Pennsylvania has not waived this immunity. 42 PA. CONS. STAT. § 8521(b). Accordingly, the Department of Corrections is not subject to suit and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

### B. EIGHTH AMENDMENT CLAIM AGAINST CHERRY AND WARHOLIC

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Monmouth Cnty.*, 834 F.2d at 347 (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of

5

cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, "[i]f a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official…will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill*, 372 F.3d at 236.

Sheeler again alleges that Defendants Cherry and Warholic refused to let him participate in the MAT Program to treat his opioid abuse disorder, in violation of his Eighth Amendment rights. (Doc. 26, at 5-6). The amended complaint contains sufficient factual allegations to assert that Sheeler has a serious medical need of opioid use disorder. However, Sheeler does not allege that he suffered any adverse health consequences as a result of the denial of MAT. Nor does he allege that he advised Defendants Cherry and Warholic that he was experiencing any unpleasant symptoms related to detoxification. Sheeler acknowledges that he has been treated for his opioid use disorder with the medication Naltrexone, though he continued to "struggle[] with cravings to use." (Doc. 26, at 4). Smith alleges that treatment with the medication Naltrexone is not appropriate for individuals with moderate or severe opioid use disorder; rather, such individuals should be treated with Methadone or Suboxone. (Doc. 26, at 5).

Sheeler's amended complaint demonstrates his disagreement with being denied placement in the MAT Program and disagreement with the medication he received to treat his opioid use disorder. Though he may have wished to participate in the MAT Program and obtain Sublocade, instead of Naltrexone, his disagreement with the course of action that

6

Defendants took is not enough to state a Section 1983 claim. *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir. 1989). This is particularly so in light of the fact that there are no allegations in the amended complaint that Defendants Cherry and Warholic intentionally withheld medical treatment from Sheeler in order to inflict pain or harm upon him. *Farmer*, 511 U.S. at 837; *Rouse*, 182 F.3d at 197. The allegations amount to nothing more than Sheeler's subjective disagreement with the treatment decisions of Defendants Cherry and Warholic. *See, e.g.*, *Groppi v. Bosco*, 208 F. App'x 113, 115 (3d Cir. 2006) (nonprecedential) (finding that a prisoner "does not have a constitutional right to participate in the drug treatment program") (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976)). Courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of medication to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. *See, e.g.*, *Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (nonprecedential) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Innis v. Wilson*, 334 F. App'x 454 (3d Cir. 2009) (nonprecedential) (same); *Whooten v. Bussanich*, 248 F. App'x 324 (3d Cir. 2007) (nonprecedential) (same); *Ascenzi v. Diaz*, 247 F. App'x 390 (3d Cir. 2007) (nonprecedential) (same).

      Sheeler failed to cure the deficient claims against Defendants Cherry and Warholic. The Court will dismiss the Eighth Amendment claim against Defendants Cherry and Warholic.

      C.   Eighth Amendment Claim Against Harry and Smith

      Sheeler seeks to hold the Supervisor Defendants—Harry and Smith—liable for deliberate indifference to his serious medical need in violation of the Eighth Amendment

because they allegedly created and implemented a policy regarding treatment for opioid use disorder. (Doc. 26, at 5). "[V]icarious liability is inapplicable to *Bivens* and § 1983 suits," and therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *cert. granted, judgment rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). First, a plaintiff may allege a supervisor enacted a policy, practice or custom, with deliberate indifference to the consequences, which directly caused the constitutional harm. *Barkes*, 766 F.3d at 316. Failure to train or supervise allegations are subcategories of policy or practice liability. *Barkes*, 766 F.3d at 316. Second, a plaintiff may state a claim by alleging a supervisor "'participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced' in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

Sheeler's sweeping and general allegation that Defendants Harry and Smith created and implemented a policy regarding treatment for opioid use disorder is insufficient to state a claim. (Doc. 26, at 5). For liability to attach to supervisors, their knowledge and acquiescence in unconstitutional conduct must be contemporaneous to the misconduct. *Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) (nonprecedential) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)). The amended complaint is devoid of any allegations regarding

8

Harry and Smith's knowledge and acquiescence in the alleged unconstitutional conduct. The Court will therefore dismiss the Eighth Amendment claim against Defendants Harry and Smith.

### D. AMERICANS WITH DISABILITIES ACT CLAIM

Sheeler again seeks to set forth a claim that Defendants violated the ADA. (Doc. 26, at 6). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132(1). Individual defendants, however, are not public entities within the meaning of Title II of the ADA and, therefore, are not subject to suit. *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under "Titles I or II of the ADA, which prohibit discrimination by employers and public entities respectively."); *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted). Thus, Sheeler cannot maintain his ADA claim against the Defendants in their individual capacities.

To the extent Sheeler is suing the Defendants in their official capacities, the claim is viable as the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that violates the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Durham v. Kelley*, 82 F.4th 217, 224 (3d Cir. 2023) ("state officers *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment") (emphasis in original).

In order to determine whether a plaintiff may sue a State for damages under Title II, courts must "(1) identify which aspects of the State's alleged conduct violated Title II; (2) identify to what extent such conduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, determine whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Bowers v. NCAA*, 475 F.3d 524, 553 (3d Cir. 2007). Pursuant to this standard, Sheeler must initially state a valid claim under Title II of the ADA, and to do this he must demonstrate that: (1) he is a qualified individual; (2) with a disability; and (3) he was denied the opportunity to participate in or benefit from the services, programs, or activities of a public entity, or was otherwise subject to discrimination by that entity; (4) by reason of his disability. *Bowers*, 475 F.3d at 553 n.32; 42 U.S.C. § 12132.

Although Sheeler broadly alleges in conclusory fashion that he was discriminated against (*see* Doc. 26, at 6), he alleges no facts to suggest that he was discriminated against because of a disability or denied accommodations for a disability with respect to any programs, services, or activities. While Sheeler generally asserts that he has been denied access to the MAT Program, he has not alleged a claim of discrimination relating to that alleged exclusion and does not specifically elaborate how the Defendants discriminated against him. Sheeler does not include factual allegations in his amended complaint describing how any disability limits him in a major life activity, as required to state plausible ADA claim. Additionally, the Court understands Sheeler to be basing his ADA claim on the denial of placement in the MAT Program. However, decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA. *See, e.g.*, *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) (nonprecedential) (finding that Iseley had not claimed that he was

excluded from any program on the basis of his disability but rather alleged "that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions") (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996)); *see also Kokinda*, 663 F. App'x at 159 ("The District Court was also correct to conclude…that Kokinda's ADA claims fail because the ADA prohibits disability-based discrimination, not inadequate treatment for the disability." (footnotes and internal quotations omitted)). Sheeler has failed to cure the deficiencies of the ADA claim, and the Court will dismiss the ADA claim against the Defendants in their official capacities.

### E.  LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 114 (3d Cir. 2002). Given the Court's above determination that Sheeler failed to state a plausible claim for relief against the Defendants, the amended complaint could not survive a renewed motion to dismiss, and the proposed amendment is futile. *See Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) (an amendment to a complaint is futile if it does "not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss"). Moreover, the Court has afforded Sheeler the opportunity to amend his complaint and he has failed to cure the specific deficiencies outlined by the Court. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

### IV.    CONCLUSION

      Consistent with the foregoing, the Court will dismiss the amended complaint (Doc. 26) pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). An appropriate Order shall issue.

Dated: March 13, 2025    *s/ Karoline Mehalchick*
                                                            **KAROLINE MEHALCHICK**
                                                            **United States District Judge**